**METZENBAUM, Plaintiff, v. LYMAN, Senior et, Defendants.**

Common Pleas Court, Cuyahoga County.

No. 631075. Decided October 21, 1952.

John J. Brown, James Metzenbaum, Cleveland, for plaintiff.
Burgess, Fulton & Fullmer, Cleveland, for defendants.

## OPINION

By LYBARGER, J.

In this action the plaintiff has filed an amended petition, in the first cause of action of which he sues defendants on a written contract to employ him as attorney to revive and prosecute certain claims for personal injury and property damage against the State before the Sundry Claims Board Plaintiff alleges that he faithfully represented defendants, and by reason of his efforts their claims were allowed. He says that there is due him according to the contract $3,750.00 which defendants have, upon demand, refused to pay. For his second cause of action plaintiff sues in quantum meruit, alleging that the reasonable and fair value of his services rendered on behalf of the defendants is $3,750.00 for which he asks judgment.

To this amended petition the defendants John and Emeroy Lyman have filed an amended joint answer. In their first defense they admit they entered a written agreement with plaintiff as alleged; that plaintiff undertook to represent them as attorney before the Sundry Claims Board; that plaintiff was present with them at a rehearing of their claims; that payment of their claims was allowed by the State. Defendants then deny all other allegations in the amended petition. For their second defense defendants allege that in March, 1948 plaintiff and defendants "entered into an oral contract of recission whereby said written contract was by mutual agreement terminated."

The cause now comes before the court upon hearing of a motion by plaintiff that (1) defendants' second defense be

stricken as a **sham**; (2) the general denial at end of first defense be stricken as a sham; and (3) judgment be awarded as prayed for by plaintiff.

This requires the court to examine these preliminary questions:

(1) Under what conditions may an answer be stricken from the files as a sham defense?

(2) By what means may the court determine whether or not an answer, good on its face, actually does present a bona fide issue for trial?

The leading Ohio case dealing with the present problem is **White v. Calhoun, 83 Oh St, 401.** This case authorizes a court on motion to strike an answer from the files and give judgment against a defendant who resorts to a sham answer filed for the purpose of delay. The decision (page 407) points out that this is an inherent power of the court which "should be exercised wisely and with discrimination," and that a motion to strike an answer as a sham should be "sustained only upon such showing upon the part of the plaintiff as leaves **no question whatever of the truth and conclusiveness of plaintiff's evidence.**"

The decision in White v. Calhoun then goes on to say:

"A situation in which there is **conflict of evidence** upon any material point, or admitting of a **rational doubt** as to the proper order to be made, should result in the overruling of the motion."

In Butterick Publishing Co. v. Smith, 24 O. N. P., N. S. 573, the court took notice of the above language of the Supreme Court and adopted it as a rule and guide for determining the matter then before it. Here then is an answer to the first question raised above as to the conditions under which an answer may be stricken from the files as a sham defense.

Obviously to determine whether or not an answer is a sham the court must have before it more than the pleading itself. In Butterick Publishing Co. v. Smith the manner of proceeding is set forth as follows (page 574):

"The motion of the plaintiff to strike the answer from the files and for summary judgment upon the petition was heard by the court upon the **petition, affidavits** in support of the motion, the **exhibits** and sworn **evidence** introduced by the plaintiff and defendant, including the testimony of the defendants * * *."

In the case of White v. Calhoun, the court indicated that the defendant's answer might be compared with his deposition taken subsequent to the filing of the answer, thus suggesting another means available for passing on the merits

of the pleading when challenged. This court therefore answers the second preliminary question above by observing that the means available for determining whether or not an answer presents a sham defense are: (a) the pleadings themselves, (b) affidavits, (c) exhibits, (d) depositions, and (e) evidence introduced by the parties upon hearing of the motion to strike.

Relying on all the sources of information which have been made available in this case to throw light on the nature of the answer of the two defendants, the court is convinced that the following material points have been established.

(1) The agreement of January 2, 1947 was a valid and binding contract between plaintiff and defendants whereby the latter agreed to pay plaintiff for his legal services. In his first cause of action plaintiff sues upon this contract for non-performance of it by the defendants.

(2) The defendants in the first defense of their amended answer, while making certain admissions, deny certain other allegations, among which: (a) that answering defendants were agents for their sons; (b) that plaintiff diligently prosecuted their claims; (c) that his efforts obtained the rehearing or final award, and (d) that they owe him any money as plaintiff alleges. In their second defense defendants claim that in March, 1948 by mutual agreement and consideration the original contract between them and plaintiff was rescinded.

(3) Defendant John Lyman in his deposition says that he "took the case away from" the plaintiff. He admits that, although he had gone to Columbus alone to talk over his claim with "some man" there, he did not follow through with a letter to him, as suggested, or take steps to handle his claim independently of the plaintiff.

A portion of his deposition introduced into evidence at the hearing indicates that in December 1950, Lyman went to the hearing of his claim with plaintiff, that plaintiff argued on his behalf, and that defendants received an award "as a result of that hearing." He did not know whether plaintiff represented him as his lawyer but he did not deny it.

Defendant John Layman admitted that it was plaintiff who advised him that the checks in payment of the claims had come.

(4) The plaintiff in his affidavit and upon testimony at the hearing swears that he never, at any time, agreed to a recission of the contract of January 2, 1947, and that the subject was not discussed by him and defendants.

(5) Plaintiff establishes that July 25, 1949 the defendant Emeroy Lyman wrote plaintiff sending him certain data to

be used in preparing and prosecuting their claim, the same being sent sixteen months after the alleged termination of the contract whereby plaintiff was employed as attorney.

(6) It was the defendants who drove plaintiff to and from Columbus on December 12, 1950 for the hearing of their claim.

(7) Upon plaintiff informing defendant John Lyman that the claim settlement checks had arrived, said defendant for the first time refused to pay plaintiff, became abusive and threatened plaintiff with adverse publicity.

Included in the above summary is most of the evidence offered by the plaintiff on which he seeks to have both defenses stricken as shams. The defendant offered no evidence at the hearing except to call the court's attention to certain portions of defendant John Lyman's deposition which portions have been summarized above. The court is fully cognizant of its duty to apply to all evidence brought forth at the hearing the tests set up by the Supreme Court in White v. Calhoun. Is there any **"question whatever of the truth and conclusiveness of plaintiff's evidence?"** Is there **"conflict of evidence upon any material point?"**

Turning first to the initial defense where by general denial defendants have sought to put in issue certain elements of the plaintiff's case, the court observes no reason whatever for the defendants to deny the truth of the statement that they were acting for their two minor sons, the other defendants in the case. They brought forth no testimony to sustain such a denial. The point, however, is not a material one so far as the defendants John and Emeroy Lyman are concerned. In view of the evidence before the court, it is a manifest evasion for defendants to deny that plaintiff diligently prosecuted their claim and that as a result of his effort a rehearing was had and an award finally made. There can be no question as to the truth and conclusiveness of the plaintiff's evidence on this point. It established that beyond any doubt the denials in defendants' first defense are not bona fide but should be stricken as shams.

As to the second defense, is there any justification, from the evidence before the court, for defendants' allegations as to a rescission? The defendants have offered nothing to indicate that there was any meeting of the minds in this respect whatsoever. The conduct of the defendants after the alleged rescission of March 1948, belies the fact of a rescission. They did nothing themselves to advance their claims at Columbus. They did not employ other counsel. Mrs. Lyman's letter of July 25, 1949 clearly negatives the contention that the contract was rescinded, for in it she was dealing with plaintiff

as attorney and furnishing him data for use in advancing defendants' interests in the claims. Defendants continued to accept plaintiff's services, they took him to the hearing December 12, 1950 where he presented their claims. Obviously they benefitted by his services, for at that hearing their claims, although twice rejected years before, were allowed.

The court cannot fail to observe the striking difference between the allegations in the present second defense and in the one formerly filed, wherein defendants contended that plaintiff in December, 1950 "agreed to render further services herein without charge to the defendants." That would be a most unusual and dubious contract for any attorney to make under the undisputed circumstances of this case. Still if it were true when alleged in the first answer it would likewise be true when defendants swore to the amended answer. Why then was it abandoned by defendants, since (if true) it might explain why plaintiff had represented defendants at the crucial hearing of December 12, 1950? Having dropped such allegation, defendants can no longer rely upon it or bring it forward as a defense. The circumstances of its having been alleged and then abandoned lends color to the plaintiff's contention that both of defendants' second defenses (in the present and former pleadings) were and are shams.

The court is convinced that there can be "no question whatever of the truth and conclusiveness of plaintiff's evidence." Also there is no "conflict of evidence upon any material point" to warrant this case going to a jury. The defendants are seeking to put the burden upon the plaintiff of offering proof on points to which, the evidence offered at the hearing indicates, no real controversy exists.

The facts in the instant case are close to those in Butterick Publishing Company v. Smith cited above. There, after a general denial, defendants set up a second defense alleging an oral accord, a satisfaction which disposed of the contract between the parties. Just as in this case, so in the Butterick case, defendants' claim conflicted with that of the plaintiff, but the court was not deterred thereby from hearing the evidence and deciding the motion. There was written evidence in the form of letters which obviated defendants' contentions.

In deciding the present case this court may properly adopt much of the language of the Butterick case. At page 577 the court said:

"From these and other letters it is clear beyond a doubt that the minds of the parties never met upon the terms of any settlement. The proposition offered by the plaintiff or its

salesman was never accepted by the defendant. There was no accord and no satisfaction. Even an unexecuted accord without performance is not a good defense. **Frost v. Johnson, 8 Ohio, 393.**

"However, in this case, there was merely an argument back and forth concerning a settlement. Hence the attempted defense of the answer that there was a complete accord and satisfaction is a subterfuge and a sham and can not be permitted to delay the collection of a just claim.

"This court is jealous of the right to a trial by jury and would not deprive any one such trial if there was any issuable fact upon which a meritorious defense could be predicated. However, to quote the language of our Supreme Court in **White v. Calhoun, 83 Oh St,** at page 405:

" 'It seems idle in this day, when the efforts of lawyers, some of them at least of the highest class, are being strenuously exerted in the direction of securing a more speedy administration of justice, to talk about a right of a defendant to stand for months and perhaps years upon a sham defense, thus preventing judgment, a defense which will crumble at the first assault upon it when the case is reached. The very statement of the proposition condemns it. It is simply a bold proposition the effect of which is to obstruct the due administration of justice.'

"A defendant should not be permitted to file false and fictitious pleadings and thereby delay for months the collection of a claim already long overdue."

In the instant case the court is convinced by the evidence offered at the hearing that the defendants, in their zeal to get something for nothing, have not only imposed on their eminent counsel (who have here done their duty by their clients with due regard for the ethics of the profession), but also defendants have interposed a sham defense deserving of being stricken from the files.

The court therefore orders that the general denial at the end of John and Emeroy Lyman's first defense be stricken from the files; that the second defense of the amended joint answer of the defendants John and Emeroy Lyman be likewise stricken. The court awards judgment to plaintiff and against defendants John and Emeroy Lyman as prayed for in plaintiff's amended petition.

Plaintiff may prepare a journal entry suitably embodying these findings. Defendants except.